Mr. Justice Hagner
delived the opinion of the court.
This is an. appeal by tbe District of Columbia, from am *423 order of the circuit court quashing the proceedings of the District authorities with reference to a tax levied against the defendant company.
The petition filed in the circuit court alleged that this company had been compelled to pay a portion of a tax which it conceived to be illegal, and that it was threatened with process to compel the payment of the residue; and it asked that a writ of certiorari should issue, commanding the District authorities to certify into the circuit court their proceedings that it might determine whether this averment as to the illegality of the tax was correct. Accordingly a full return was made; and from the statement thus presented we find the following to be the facts of the case:
On the 23d day of June, 1884, articles of association were filed under the general laws of the District, setting forth the scheme of incorporation of the Anglo-American Insurance Company, stating the proposed amount of its capital, the number of shares, etc. Nothing more seems to have been done by the company until the second of September, when, as it appears from the papers included in this return, a subscription was commenced; but this was not completed (even to the extent to which it was finally carried) until the 10 th of September, on which day certificates for stock were issued to the subscribers.
In December, 1884, the District authorities conceived it their duty to take notice of this scheme of incorporation (as the company had published on the 10th of September that it was fully organized for business) with the view of exacting from it a tax upon its capital stock.
Accordingly an assessment blank was presented to the company to be filled under the appropriate head, as preliminary to the collection of the tax. This paper, under date of January 22, 1885, was signed by Charles W. Tankersley, who swore that he was president of the company, and filled in one of the spaces of this assessment blank which was entitled “schedule of personal property.” It contained a printed notification that it was to be returned on or before July 15, 1884, under a penalty of an additional charge of *424 50 per cent, for any delay beyond that date, and purported to be an assessment for tbe taxable year ending June 30, 1885. The entire entry, partly printed and partly in writing, is as follows — the words and figures in italics being those which were written by Tankersly, or by his authority, in the blank spaces :
l< Capital stock of a corporation: All the shares to be appraised in bulk, at a fair marketable value, on the first day of July, 1884, and deduct the assessed value of all real estate owned by said corporation, fifty thov,sand shares, par value $10 each, subscribed and paid for September 2, 1884, fair marketable value on January 1, 1885 and now $5 per share — $250,000.”
It appears that the entry on the assessment books of the District authorities was altered from time to time. In January, 1885, the total assessment was stated at $500,000 and the amount of tax at $7,500. That was changed after the 22d of that month, hy reducing the assessment to $250,000 and it then read, “ 1, Jfrom September 1,1884, on $250,000— $1,250; 2, | from January 1, 1885, on $250,000' — $1,875." And the latter assessment was the basis of the bill finally presented to the company.
Under circumstances which it is insisted on the part of the petitioner amounted to duress, the company paid the $1,250, which was not one-hafoi the tax for the year . the amount charged for what was called the other half being $1,875.
The contention of the company is that the yearly assessments must be closed, according to law, on the first day of July of each year, and that taxes on property generally are to be computed as of this last day until the 30th of June of the next year. It insists that it possessed no» property on the 30th of June or the 1st of July, 1884; that although it had published to the world, on the 23d of June, a notice that it had filed its certificate of incorporation, yet it was not until the second of September, after the close of the previous assessment year, that any steps whatever were taken towards the realization of its promise; and it was> *425 not until the 10th of that month that it could properly be said to have 'completed even the partial subscription then made.
If this is a correct statement-of the facts, then the District Gi-overnnaent, in -our -opinion, had no -authority whatever to levy this tax.
There-are only two cases recognized by the law governing the assessment of taxes, in which it is permissible for the District authorities to add to the assessment after it has been closed on the 30th of June. Those exceptional cases -are specified in section 12 of chapter 111 of the act-approved •March 3, 1817, which, although it appears from its general language to be applicable only to the current year, yet contains this provision-:
“ Sec. 18. That this act shall remain in force as the tax law of the District of Columbia for each subsequent year 'after June 30, 1818, until repealed.”
This act was, therefore, in full force in 1885. The first ■exception thus spoken of -appears in the twelfth section, as follows:
“ Said assessors shall, before the first day of October, 1811, under the direction of the superintendent of assessments =and taxes of said District, assess the value of all the real property not embraced in the assessment of the fiscal year ending June 80, 1811, inclusive of all bvÁldings erected or roofed, improved or enlarged, -and not heretofore taxed.” etc.
And the other exceptional provision is this :
“Where a person coming into the District subsequent to •June 30, 1811, engages in trade of a permanent character, he shall pay a tax proportioned to the fraction of the tax .year ending June 30, 1818, during which he conducted the ‘trade,” etc.
Neither of those provisions describes the case of an assessment of the capital stock of a corporation, which is specially provided for in section 11 of the act; and it was properly conceded in the argument, on the part of the District, that neither of the two exceptional cases, in which the assessors were authorized to add to the closed assessment, could be held to include the -case at bar-.
*426 But the reply of the District is, that although it may be true the stockholders did not subscribe nor pay anything on their subscriptions until the second of September, or consummate anything in the way of practical organization until the tenth of that month, yet as they had filed their certificate of organization on the 23d of June, and on the 10th of September had published the advertisement announcing that they had organized for business, and that the capital of the company was to he $500,000; had named the officers and thus held themselves out as an existing corporation — it resulted that the company had rendered itself liable to assessment for the year 1884-5 ; that the incorporation having taken place before the first of July, 1884, they became liable to pay on their capital, whenever during the year they should make good their programme or scheme of business, notwithstanding the money might not be subscribed and paid until after the first of July.
We do not think this position can be sustained. The' publication of the 23d of June was merely a project or scheme that might never be realized ; probably a large proportion of such schemes, quite as fair of promise, perish and are never heard of again. Non conslai that the $500,000' or $5 towards that amount, would ever be subscribed; and to say that the right to make an assessment could grow into being, from the mere fact of the incorporation, on the chance of subscriptions being made, seems to us to place upon too uncertain a basis the exercise of the sovereign power of taxation which always requires a grant to sustain it.
The case does not differ materially from that of a person living in- another city until after the first of July and then removing to Washington. It is to be supposed that there has already been levied, by the authorities where he lived,, the usual tax on whatever property he had there in the; way of stock or other effects, and that he will have been assessed at that place for the whole year, and not for a-fractional part only. He removes here, we will say, in the latter part of the year, bringing his personal effects, to *427 make this city his home. To tax him here and make him pay here upon the same property upon which he has already paid a full- year’s tax at his former home, would be most Unjust, unless his case should fall within one of the two ■exceptions already referred to.
For these reasons, we think there was no authority for the imposition of this tax. It is unnecessary to consider the further argument on the part of the District, that the company paid part of this tax voluntarily. The consent of the'tax payer could not confer on the corporation the sovereign power of taxation, wdiere it had not been given by law.
Nor do we intend to decide, on the other hand, that if the company paid that part of the charge under circumstances-of duress, as it insists, it can recover from the District the amount thus paid.
We simply hold, for the reason given, that the court below was correct in its decision, and that the entire proceedings ought to be quashed; and it is so ordered.